**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | |
|---|---|
| **DIANA GILMORE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **No. 20-cv-1190-TMP** |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **ACTING COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

─────────────────────────────────────────────────────────

### ORDER AFFIRMING THE COMMISSIONER'S DECISION
─────────────────────────────────────────────────────────

On August 25, 2020, Diana Gilmore filed a Complaint seeking judicial review of a social security decision.[1] (ECF No. 1.) Gilmore seeks to appeal from a final decision of the Commissioner of Social Security ("Commissioner") determining that she did not qualify for a period of disability, Social Security Disability Insurance benefits ("SSDI"), and supplemental security income ("SSI"). For the following reasons, the decision of the Commissioner is affirmed.

### I.   FINDINGS OF FACT

On May 9, 2018, Gilmore protectively filed an application for

_____

[1]After the parties consented to the jurisdiction of a United States Magistrate Judge on March 31, 2021, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.

a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 404-434, and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1385. (R. at 15, 189-92.) The applications, which alleged an onset date of March 1, 2017, were denied initially and on reconsideration. (R. at 15, 189.) Gilmore then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on September 27, 2019. (R. at 15.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Gilmore was not disabled from March 1, 2017, through the date of his decision. (R. at 31-44) At the first step, the ALJ found that Gilmore had not "engaged in substantial gainful activity since March 1, 2017, the alleged onset date." (R. at 17.) At the second step, the ALJ concluded that "through the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." (R. at 18.) However, the ALJ found that "[a]s of the SSI application date, the claimant had the following severe impairment: scoliosis." (R. at 19.) The ALJ noted that there was "some history of cellulitis of the foot after a puncture wound from a nail while the claimant was

Civ. P. 73. (ECF No. 17.)

walking her dog. However, by August of 2018, the claimant reported that the condition had resolved." (R. at 19.) The ALJ also acknowledged that Gilmore has at times qualified as obese; however, her obesity did not affect her "ability to do basic work activities . . . and is therefore non-severe." (Id.)

At the third step, the ALJ concluded that Gilmore's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 after the application date. (R. at 19.) Accordingly, the ALJ had to next determine whether Gilmore retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Gilmore] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, [Gilmore] can only stand and walk for four hours in an eight-hour workday. [Gilmore] can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds. [Gilmore] can perform no work at unprotected heights or around unguarded moving machinery.

(R. at 20.)

In reaching the RFC determination, the ALJ discussed Gilmore's testimony and the medical evidence in the record. The ALJ acknowledged that Gilmore had been diagnosed with scoliosis. However, he observed that "there is little, if any, evidence of

-3-

treatment for any back problems in the record." (Id.) Although Gilmore had "visited the emergency department of both Jackson Madison County General Hospital . . . and the Regional Hospital of Jackson . . . for other reasons in late May and early June of 2018, those records [do] not show any complaints regarding claimant's back." (Id.) In fact, the ALJ noted "the record does not show any treatment by or complaints to any medical provider from the alleged onset date forward." (Id.)

The ALJ next discussed the function report that Gilmore completed in June of 2018. The ALJ wrote:

> The claimant did report that her ability to work was limited because she could not stand too long or sit too long. However, she also reported that, on a daily basis, she took care of her house, her dogs, and her husband. She reported bringing her husband dinner and his shot daily and feeding and playing with her dogs, though her husband also fed and played with the dogs. She reported no problems in personal care. She also reported cooking daily, with preparation taking "maybe 1 hours" because she could not stand for very long. She did, however, report that she could mow the lawn, do the laundry, and do housecleaning. She reported going outside daily and that she could walk, drive a car, and ride in a car. She reported being able to shop weekly. She reported daily hobbies that included playing the Wii, watching television, and playing games on her phone, but that she could not sit as long as she could before. Despite being able to play with her dogs, mow her lawn, do housework, and cook on a daily basis, the claimant also reported that she could only lift five pounds and walk "for a little while." She did report that she could only stand for a couple of hours. She also reported that she could walk for "maybe 1 hours" before needing to rest for 30 minutes before resuming walking. She did not report using

-4-

any assistive devices.

(Id.) The ALJ found that "her report showed a level of activity that was not fully consistent with a finding of disability." (R. at 21.) Although Gilmore submitted a second function report in October of 2018, the ALJ stated, "her report showed little in the way of change . . . and still showed a level of activity that was not fully consistent with a finding of disability." (R. at 22.)

The ALJ next considered Gilmore's August 2018 physical consultative examination. The ALJ wrote:

> The examination was performed by Donita Keown, M.D., at the request of the Social Security Administration. At the examination, the claimant complained only of chronic pain in the thoracolumbar column stemming from scoliosis diagnosed 30 years before the examination (Ex. 3F), though records indicate that she was able to work and to work at the substantial gainful activity after her reported diagnosis (See, e.g., Ex. 3D, 4D, 6D, 8D, 1E, 3E). The claimant reported no treatment for the condition and did not report any treating physician, despite reporting that she had the financial capacity to smoke cigarettes. Dr. Keown noted that she did not describe radicular pain, bowel or bladder change, or malignancy. The doctor noted that she did not use bracing or assistive devices.

(R. at 21.) The ALJ found "the claimant's own reports at the examination provide little support for a finding of disability." (Id.) The ALJ also found that Dr. Keown's observations at the examination did not support a finding of disability. The ALJ wrote:

> The doctor did observe that the claimant was poorly kempt. However, Dr. Keown observed that the claimant

-5-

moved from seated to standing unremarkably and did not require assistive devices. The doctor observed the claimant to have evidence of asymmetric curvature of the thoracolumbar column, with a possible right convexity. Dr. Keown observed the claimant to have dorsiflexion to 70 degrees, left and right lateral flexion to 20 degrees, and extension to 20 degrees, with negative straight leg raises. The doctor graded the claimant's motor strength in all extremities at 5/5. Dr. Keown observed the claimant to have a normal straightaway walk, tandem step test, toe walk test, heel walk test, one-foot stand, and Romberg test. The doctor diagnosed the claimant with scoliosis only[.]

(Id.)

The ALJ also found that the x-rays ordered by Dr. Keown did not fully support a finding of disability. (Id.) The ALJ wrote:

The x-rays, performed the day of the examination, showed a broad but incompletely characterized mild dextrocurvature of the thoracolumbar spine. The x-rays also showed multilevel mild to moderate lumbar facet arthropathy, greatest along the lesser curve, and moderate multilevel asymmetric degenerative disc findings, greatest from L2-3 through the L5-S1 junction, with bilateral joint arthropathy. The x-rays, showing, at most, moderate abnormalities, did not fully support a finding of disability[.]

(R. at 21-22.)

Next, the ALJ considered a consultative examination performed by Dr. Peter Gardner. (R. at 22.) The ALJ observed that "the doctor reported that he reviewed both hospital and primary care records . . . though there is little, if any, evidence of primary care treatment on the record." (Id.) The ALJ found that Gilmore's "reports and presentation at the examination were not fully

-6-

consistent with either the prior examination or her lack of treatment." (Id.) The ALJ wrote:

> According to Dr. Gardner, the claimant reported that she was unable to work secondary to chronic pain in her thoracolumbar region. She reported that the back pain had been present since her late teens and had worsened over time (Ex. 4F), though, again, records indicate that she has been able to work at the substantial gainful activity level (See, e.g., Ex. 3D, 4D, 6D, 8D, 1E, 3E). She reported that sitting and standing for moderate periods of time aggravated the pain. She also reported that her ability to lift and bend had been "greatly compromised" by the condition (Ex. 4F), though her reports are not fully consistent with the moderately limited range of motion observed by Dr. Keown (See Ex. 3F). She then reported radiation to both lower extremities and that this prohibited her from bending and lifting (Ex. 4F), which, again, is inconsistent with her prior reports to Dr. Keown and with the doctor's observations (See Ex. 3F). There is little, if any, evidence of visits to any provider that would support such worsening. She also reported that she had developed balance issues stemming from her lumbar pin that required her to ambulate with a cane in her right hand. She reported this (Ex. 4F), though Dr. Keown observed her to have a normal straightaway walk, tandem step test, toe walk test, heel walk test, one-foot stand, and Romberg test and to be able to move from seated to standing with no need for an assistive device (See Ex. 3F). Again, there is little, if any, evidence of visits to any provider that would support such worsening.

(Id.) The ALJ also found that "Dr. Gardner's reported observations were not consistent with Dr. Keown's prior observations and appear based to a large extent on the claimant's subjective reports of pain." (R. at 23.) The ALJ wrote:

> Dr. Gardner reportedly observed sciatic pain and paresthesia extending from the gluteal areas to both

upper thighs. The doctor did note a balance deficit,
stating that a cane was necessary for safe ambulation
(See Ex. 4F). However, again, Dr. Keown observed the
claimant to have a normal straightaway walk, tandem step
test, toe walk test, heel walk test, one-foot stand, and
Romberg test and to be able to move from seated to
standing with no need for an assistive device (See Ex.
3F). Dr. Gardner stated that the claimant reported lumbar
paraspinal tenderness to palpation. The doctor stated
that there was sciatic pain radiating down both legs (Ex.
4F), though there is little, if any, evidence of
objective testing or electromyography in the record. He
stated that the claimant reported pain with straight leg
raising bilaterally (Ex. 4F), but Dr. Keown previously
observed the claimant to have negative straight leg
raises (See Ex. 3F) and the record shows a lack of any
other treatment or observations of worsening.

(Id.)

The ALJ also considered Gilmore's testimony at the hearing.

(Id.) The ALJ recounts Gilmore's testimony as follows:

The claimant testified that she had had scoliosis and
lower back problems for 33 years. In response to a
question [as] to "when she quit working due to" her back,
she testified a couple of years ago. She testified that
she could not get to the doctor prior to a couple of
years ago, though the only treatment in the record was
for ailments unrelated to her back (See Ex. 1F, 2F). She
has also regularly and consistently reported that she had
the financial wherewithal to smoke tobacco cigarettes
(See Ex. 1F, 2F, 3F, and 4F). The claimant testified that
she began using the cane the month before the hearing, or
in approximately August of 2019. She testified that she
fell and hit her head and began using the cane after the
fall. However, there is little, if any, evidence of any
medical treatment related to such an alleged fall,
particularly not in August of 2019. She also appeared
with the cane at Dr. Gardner's consultative examination
in June of 2019 and appears to have made no specific
mention of a fall. Though she reported that moderate
sitting and standing aggravated the back pain there (See

Ex. 4F), she testified that she could not get up and walk
due to pain. She testified that she had pain at a level
of 10 on an increasing scale of 10 due to her back,
though there is no evidence of emergency treatment for
such a significant level of pain. She admitted to taking
no pain medication, not even mild over-the-count[er] pain
relievers. She testified that she had looked into free
medical treatment, but that there was none. However, she
previously appears to have been willing to seek emergency
treatment for other problems . . . . Further testimony
showed further inconsistencies. The claimant testified
that she could only sit for 30 minutes, but then she
needed help or had to wait until the pain eases. She
testified that she could not do any repetitive lifting
due to back and leg pain. She testified to needing to use
a scooter when shopping and having to put groceries in a
wheelchair. She testified that she could only do
housework for 30 minutes, then she needed to take a
break, all of which appears inconsistent with Dr. Keown's
observations (See Ex. 3F). She then testified that she
had no activities outside the home because she had to
take care of her husband and her dogs, testimony that is
consistent with her function reports, which show much
greater function and the ability to care for her husband
and dogs (See Ex. 4E, 9E). She testified that her husband
is an amputee, having had a leg amputated. She testified
that she had to bring him a small bowel of water to take
a sponge bath. She did testify that she cooked the family
meals. She testified that someone else took care of the
yard, though she previously reported being able to mow
the lawn[.]

(R. at 23-24.) The ALJ ultimately found Gilmore's testimony "not

fully consistent with the evidence of record." (R. at 24.)

The ALJ then assessed each of the medical opinions discussed

above and determined their persuasiveness. The ALJ found Dr.

Keown's opinion "partially persuasive." (Id.) The ALJ stated, that

Dr. Keown's opinion is "generally consistent with the evidence of

record, though that evidence consists, in large part, of the doctor's own observations. However, the doctor's opinion does not fully consider all of the limitations flowing from the claimant's scoliosis, only noting exertional limitations." (Id.)

The ALJ found Dr. Garnder's opinion unpersuasive. (Id.) In assessing the opinion's credibility, the ALJ explains:

> Dr. Gardner reportedly examined the claimant and reviewed her medical records, though his observations on examination contain multiple notes of the claimant's subjective reports and some of the medical records he reportedly reviewed do not appear to exist in the record. The doctor's opinion is not well supported or explained when viewed in light of his examination, with some limitations, such as manipulative limitations and environmental limitations to pulmonary irritants, humidity and wetness, etc., being wholly unexplained. His opinion is inconsistent with the evidence of record, which shows little in the way of poor balance, sciatic pain, or the need for a cane prior to his examination. The claimant was inconsistent as to when her reported need for a cane appeared, testifying that the cane was needed after a fall that allegedly occurred after the doctor's examination. The opinion is inconsistent and overwhelmingly pessimistic when viewed in light of Dr. Keown's observations in terms of the claimant's gait, various testing, and range of motion (See Ex. 3F). The opinion is also overly pessimistic when viewed in light of the claimant's function reports (See Ex. 4E, 9E) and the claimant's testimony to being able to care for her husband and dogs.

(R. at 25.)

The ALJ found the opinions of state medical consultants Dr. Parrish and Dr. Knox-Carter regarding Gilmore's Title XVI claim partially persuasive. (Id.) The ALJ wrote:

-10-

> The doctor[s'] opinion[s] [are] well supported and
> explained by references to the record. However, [the
> doctors'] opinion[s] [are] slightly optimistic when the
> evidence is viewed in the light most favorable to the
> claimant and shows a greater exertional capacity than Dr.
> Keown opined (See Ex. 3F). The opinion[s] also do[] not
> fully consider the environmental limitations flowing from
> the claimant's back impairment.

(R. at 25-26.)

The ALJ concluded that "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 24.)

The ALJ found at step four that Gilmore "has been unable to perform any past relevant work since the application date." (R. at 26.) In making this determination, the ALJ relied on hearing testimony from vocational expert Dana M. Stoller regarding Gilmore's past relevant work as a fast-food assistant manager, which Gilmore performed at "medium." (Id.) Stoller testified that Gilmore's "residual functional capacity [] precludes performance of the claimant's past relevant work." (Id.) The ALJ accepted the vocational expert's testimony and found that the demands of Gilmore's past relevant work exceeded her RFC. (Id.)

At step five, the ALJ again relied on the vocational expert's

testimony and concluded that "considering [Gilmore's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. at 27.) The ALJ additionally commented that "[i]f [Gilmore] had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.21. However, [Gilmore's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." (Id.) Accordingly, the ALJ turned to the vocational expert "[t]o determine the extent to which [Gilmore's] limitations erode the unskilled light occupational base." (Id.)

The ALJ stated that the vocational expert, when asked "whether jobs exist in the national economy for an individual with [Gilmore's] age, education, work experience, and residual functional capacity," testified that "the individual would be able to perform the requirements of representative occupations such as cashier (DOT# 211.462-010, light, unskilled (SVP 2) work, with 40,000 jobs nationally), office helper (DOT# 239.567-010, light, unskilled (SVP 2) work, with 14,000 jobs nationally), and inspector (DOT# 739.687-038, light, unskilled (SVP 2) work, with 8,800 jobs nationally)." (Id.) Determining that the vocational expert's

testimony was reliable and consistent with the information contained in the Dictionary of Occupational Titles, the ALJ concluded, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id.) Accordingly, the ALJ found that Gilmore had not been under a disability, as defined by the Act, from March 1, 2017, the alleged onset date, through March 31, 2017, the date last insured. (R. at 27.) The ALJ also concluded that Gilmore was not under a disability as defined by the Act since May 9, 2018, the date the application was filed. (Id.)

On November 6, 2019, the ALJ issued a decision detailing the findings summarized above. (R. at 15-28.) On July 20, 2020, the Appeals Council denied Gilmore's request for review. (R. at 1-3.) Gilmore now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. Gilmore argues that the ALJ failed to consider whether she met or equaled one of the Listing of Impairments in 20 CFR § 404.1520(a)(4)(iii) and that this failure was not harmless error. (ECF No. 18 at 4, 7.)

## II.  CONCLUSIONS OF LAW

**A.    Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts

from its weight.'" <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 388 (6th Cir. 1984)).  If  substantial  evidence  is  found  to  support  the Commissioner's  decision,  however,  the  court  must  affirm  that decision and "may not even inquire whether the record could support a decision the other way." <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994) (quoting <u>Smith v. Sec'y of Health & Human Servs.</u>, 893 F.2d 106, 108 (6th Cir. 1989)).  Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d 709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)).  Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations,  and  to  resolve  material  conflicts  in  the  testimony. <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 528 (6th Cir. 1997); <u>Crum v. Sullivan</u>, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial  gainful  activity  by  reason  of  any  medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a  continuous  period  of  not  less  than  12  months."   42  U.S.C.

§ 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant can do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

-16-

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R.

-17-

§§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further
review is not necessary if it is determined that an individual is
not disabled at any point in this sequential analysis. 20 C.F.R.
§ 404.1520(a)(4).

C.    **Title II Claim**

     The ALJ found that, during the thirty-day relevant period
for claimant's Title II claim, the record established no medically
determinable impairment. (R. at 17-19.) The ALJ thus found Gilmore
not disabled for purposes of her Title II claim at step two of the
sequential evaluation process. (R. at 15-19.) Plaintiff did not
challenge this ruling in her opening brief and confirmed that she
was not challenging the decision in her reply brief. (ECF No. 25 at
1.) Therefore, the ALJ's decision regarding Gilmore's Title II
claim is affirmed.

D.    **Whether Substantial Evidence Supported the ALJ's Step Three**
      **Finding**

     On appeal, Gilmore challenges the ALJ's determinations at the
third step of the sequential analysis. Specifically, Gilmore argues
that there is clear evidence that she meets Listing 1.04A, or in
the alternative, equals listing 1.04C.[2] Gilmore states that the ALJ

_____

[2]Listing § 1.04 has since been deleted from the listings, replaced
by 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.15. But listing 1.04
was in effect when the ALJ rendered his decision on November 6,

"did not make any reference at step three to any listing, much less compare the evidence with a listing and explain his reasoning for finding that her condition did not meet or equal a listing." (ECF No. 18 at 5.)

While Gilmore concedes neither of the state agency doctors, nor Dr. Keown stated that Gilmore met a listing, she disagrees that no subsequent evidence was submitted that would alter that previous conclusion. (Id.) Gilmore relies on Dr. Gardner's findings, which she argues would support a conclusion that she meets or equals Listing 1.04. (Id.) Gilmore states that her x-rays from August 2018 showed that "she has mild to moderate predominant facet arthropathy in her lower back." (Id. at 6; R. at 340.) The radiologist observed, "this was a significant progression from her condition from the previous image take[n] in 2007." (Id.) Dr. Gardner observed, "positive straight leg raising and sciatic pain radiation down both legs during the exam he performed on June 17, 2019." (R. at 348.) Dr. Gardner also noted that Gilmore "had a balance deficit that limited her to walking only short distances without a cane." (Id.) Gilmore also notes that the agency doctors did not have access to Dr. Gardner's examination findings at the time that they made their opinions. (ECF No. 18 at 5-6.) Gilmore argues that "the

---

2019, and it still applies to Gilmore's case.

ALJ was required to discuss this evidence and provide an explanation for why it was not persuasive given that the other opinions were dated and stale as of the time of the hearing and no recent evidence contradicted Dr. Gardner's findings." (Id. at 7.)

At step three of the sequential evaluation process, the claimant has the burden of establishing a condition that satisfies the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings). See 20 C.F.R. §§ 404.1505, 404.1520, 416.905, 416.920; Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). Because the listings permit a finding of disability based solely on medical evidence (without considering a claimant's vocational profile), the Commissioner applies a heightened evidentiary standard at step three. Lee v. Comm'r of Soc. Sec., 529 F. App'x 706, 710 (6th Cir. 2013). To establish an impairment that meets a listing, a claimant must present "specific medical evidence to satisfy all of the criteria" of the listing. Perschka v. Comm'r of Soc. Sec., 411 F. App'x 781, 786 (6th Cir. 2010) (citing 20 C.F.R. § 416.925). An impairment that manifests only some of the criteria, no matter how severely, does not qualify. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

An ALJ is required to address a particular listing only when the record raises a "substantial question" as to whether the

claimant satisfies the requirements of the listing. Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 432 (6th Cir. 2014) (citing Sullivan, 905 F.2d at 925). To raise a "substantial question," the claimant must point to specific evidence that demonstrates that she "reasonably could meet or equal *every* requirement of the listing." Id. (emphasis added); see Zebley, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of the criteria, no matter how severely does not qualify."); Halter, 279 F.3d at 354-55 (stating claimant must satisfy the diagnostic description and one of the four sets of criteria); see also Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011)(holding that it was not harmless error for the ALJ to fail to analyze Step Three as to an impairment found to be severe at Step Two where the claimant put forth evidence that possibly could meet the relevant listing). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." Smith-Johnson, 579 F. App'x at 433.

If the claimant presents sufficient evidence to raise a "substantial question" at step three, "[a]n administrative law judge must compare the medical evidence with the requirements for

listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds, 424 F. App'x at 415. Additionally, the ALJ looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing. See 20 C.F.R. § 404.1526(c) and (d); SSR 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986). The Sixth Circuit has instructed that when an ALJ finds that a claimant does not meet or medically equal a specific listing, the ALJ must actually evaluate the evidence, compare it to the section of the Listing at issue, and give an explained conclusion, in order to facilitate meaningful judicial review. Reynolds, 424 F. Appx. at 415-16. "Without it, it is impossible to say that the [ALJ's] decision at Step Three was supported by substantial evidence." Id. at 416 (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 (3d Cir. 2000); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999); Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).

However, the Sixth Circuit has also held that if there are sufficient factual findings elsewhere in the ALJ's opinion, those

findings are sufficient to support their conclusion at step three. Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014); Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006)(looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination and finding no need to require the ALJ to "spell out every fact a second time").

Here, the ALJ determined that Gilmore had the following severe impairments: Scoliosis. (R. at 19.) However, the ALJ concluded that this impairment did not meet or medically equal the severity of a listed impairment. (Id.) Specifically, the ALJ stated:

> No physician or specialist indicated that the claimant's impairments meet or medically equal a listed impairment. Additionally, State medical consultants who evaluated the evidence did not find that the claimant had an impairment or combination of impairments that met or medically equaled one of the listed impairments. No subsequent evidence has been submitted that would alter the previous conclusions that the claimant does not have an impairment or combination of impairments severe enough to meet or equal a listing.

(R. at 19-20.) The ALJ did not mention listing 1.04 in his decision.

Although the ALJ did not address any specific listing in his step three findings, an ALJ is only required to address a particular listing when the record raises a "substantial question" as to whether the claimant satisfies the requirements of the listing. Smith-Johnson, 579 F. App'x at 432. To raise a

-23-

"substantial question," the claimant must point to specific evidence that demonstrates that she "reasonably could meet or equal *every* requirement of the listing." Id. (emphasis added).

Gilmore claims that there is clear evidence that she meets Listing 1.04A. This listing requires the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app 1, § 1.04. "For a disorder of the spine to meet Listing 1.04A . . . the claimant must establish the simultaneous presence of all of the medical criteria in paragraph A. Once this level of severity is established, the claimant must also show that this level of severity continued, or is expected to continue, for a continuous period of at least twelve months." SSAR 15-1(4), 2015 WL 5697481, at *5 (Sept. 23, 2015). Claimant did not present evidence of a "compromise" of a nerve root or spinal cord as required by the listing. The 2018 x-ray ordered by Dr. Keown did not describe concerns about nerve root compromise. (R. 21-22, 340).

-24-

Gilmore stated that her x-ray showed that she has "mild to moderate predominant facet arthropathy in her lower back." (ECF No. 18 at 6.) However, facet arthropathy alone does not establish nerve root compromise. See Morris v. Astrue, No. 3:08-CV-77, 2009 WL 399447, at *4 (E.D. Tenn. Feb. 18, 2009). There is also no evidence in the record of motor loss, sensory/reflex loss, or positive straight-leg-raise testing. The ALJ noted in his decision that Dr. Keown observed Gilmore had full muscle strength, no pain with straight leg raises, and had a normal gait without an assistive device. (R. at 21.)

Gilmore relies heavily on the opinion of Dr. Gardner in her brief, even though the ALJ found the doctor's opinion to be unpersuasive. (R. at 25.) However, even Dr. Gardner's opinion does not support a finding that Gilmore meets listing 1.04A. Although he recorded positive straight leg raise testing, he did not record findings of weakness, atrophy, sensory loss, or reflex loss. (R. at 23, 348.)

Claimant also argues that she equals listing 1.04C. That subpart requires lumbar spinal stenosis "resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate

effectively." 20 C.F.R. pt. 404, subpt. P, app 1, § 1.04C. The inability to ambulate effectively is an "extreme limitation" that is "defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held device(s) that limits the functioning of both upper extremities." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b). To show an impairment that equals a listing, a claimant must "present medical findings equal in severity to *all* criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531.

Gilmore failed to present evidence that she equals 1.04C because she failed to show that she is unable to "ambulate effectively" as defined by the listing. The ALJ noted that Gilmore stated that she was able to mow her lawn, shop weekly, perform housework, and walk her dog. (R. at 21.) Gilmore also reported in 2018 that she could walk up to an hour at a time before needing to rest and did not use an assistive device. (Id.) The ALJ noted that Dr. Keown reported a "normal straightaway walk, tandem step test, toe walk test, heel walk test, one-foot stand, and Romberg test. (Id.) Although Dr. Gardner stated that Gilmore needed a cane for safe ambulation, the ALJ found his opinion unpersuasive because it was inconsistent with the evidence of record "which shows little in

the way of poor balance, sciatic pain, or the need for a cane prior to his examination." (R. at 25.) Additionally, the ALJ found Gilmore was "inconsistent as to when her reported need for a cane appeared." (Id.)

Gilmore failed to raise a "substantial question" that she met or equaled Listings 1.04A & C. As a result, the ALJ was not required to specifically address the listing in his decision. Smith-Johnson, 579 F. App'x at 432. Additionally, there is substantial evidence to support the ALJ's step-three conclusion with factual findings elsewhere in the decision. Forrest, 591 F. App'x at 432. Therefore, the undersigned finds that the ALJ's determination that Gilmore did not meet a listing under 20 CFR § 404.1520(a)(4)(iii) was supported by substantial evidence.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

October 19, 2021
Date

-27-